**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-04-409 (1) |
| | § | C.A. No. C-05-340 |
| VERONICA CALVILLO DE SANTILLAN, | § | |
| | § | |
| Defendant/Movant. | § | |

**ORDER GRANTING IN PART AND DENYING IN PART MOTION
TO DISMISS, GRANTING MOTION FOR SUMMARY JUDGMENT,
DENYING MOTION TO VACATE, SET ASIDE OR CORRECT
SENTENCE AND DENYING CERTIFICATE OF APPEALABILITY**

On July 11, 2005, the Clerk received from Movant Vernonia Calvillo de Santillan ("Calvillo")
a motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255. (D.E. 31).[1] The
government filed its answer, motion for summary judgment, and alternative motion to dismiss on
September 27, 2005. (D.E. 35-37). Calvillo filed "objections" to the government's motions on
October 24, 2005, (D.E. 38), which the Court has also considered.

As discussed herein, Calvillo's motion, in part, challenges the validity of her plea agreement.
Specifically, she claims that her counsel was ineffective because he did not explain the consequences
of her plea agreement to her, and because he allegedly promised her she would receive a six-month
sentence. Those claims of ineffective assistance, which ultimately challenge the validity of her plea
agreement, are addressed and denied on their merits. Likewise, her claim that the government
breached the plea agreement is addressed and denied on its merits. The remainder of her claims are
barred by her valid and enforceable waiver of her right to seek § 2255 relief. For these reasons,

---

[1] Docket entry references are to the criminal case, C-04-409.

1

discussed in more detail herein, the government's motion for summary judgment is GRANTED IN PART and DENIED IN PART, the government's motion to dismiss is GRANTED and Calvillo's § 2255 motion is DENIED.  Additionally, Calvillo is denied a Certificate of Appealability.

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

## II. FACTS AND PROCEEDINGS

On August 11, 2004, Calvillo was charged in a one-count superseding indictment with transporting an illegal alien, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(ii). (D.E. 9).  The superseding indictment included a separate paragraph setting forth an aggravating factor.  Specifically, it charged Calvillo with obstruction of justice.  This factor was based on an allegation that she instructed the alien, a material witness, to make false statements during the witness' deposition.

On October 15, 2004, Calvillo appeared for her final pre-trial conference.  Her counsel, Albert Anthony Pena III, explained that Calvillo wanted to plead guilty to the offense, but "not true" to the aggravating factor.  (D.E. 33, Rearraignment Transcript ("R. Tr.") at 2-3).  The Court then explained that it would not accept a plea to only part of the indictment.  (R. Tr. at 3-4).  The Court recessed the proceeding so that the AUSA and defense counsel could discuss the matter.  (R. Tr. at 5-8).  When the case was recalled, the AUSA orally moved to dismiss the aggravating factor, and the Court granted that motion.  (R. Tr. at 8).

After Calvillo was put under oath, the Court explained that the aggravating factor could still be used to enhance her sentence:

> THE COURT: Mr. Pena, on this lady, even if the U.S. Attorney
> dismisses that aggravating factor, it's still something I can consider at

2

sentencing, if the facts are brought before me.

MR. PENA: I'm sorry, Your Honor?

THE COURT: It's still something I could consider at sentencing, if the facts are brought before me in the Presentence Investigation Report.

MR. PENA: I understand.

THE COURT: You do?

MR. PENA: Yes.

THE COURT: Do you understand that, Ms. Santillan?

THE DEFENDANT: About?

THE COURT: There is – in your indictment, there is a charge, an aggravating factor which has always been a sentencing issue which would increase your guidelines two points, if I found them beyond a preponderance of the evidence as true, that is, obstruction of justice. And though apparently in the, as part of the plea, the U.S. Attorney has dismissed the part of the indictment that has that charge in it, I could still consider it, if it's brought to my attention at the time of sentencing. So I want you to know that. Do you understand that?

THE DEFENDANT: Yes.

(R. Tr. at 11-12).

Ultimately, Calvillo pleaded guilty to the indictment (without any aggravating factor) pursuant to a written plea agreement. (D.E. 19, 20). In exchange for her guilty plea and her waiver of appellate and § 2255 rights (discussed below), the government agreed to recommend the maximum credit for acceptance of responsibility and to recommend a sentence within the applicable guideline range. (D.E. 20).

The plea agreement contained a waiver of Calvillo's right to appeal and to file a § 2255 motion:

Defendant is aware that Title 18 U.S.C. § 3742 affords a defendant the

3

right to appeal the sentence imposed.  The defendant waives the right
to appeal the sentence imposed or the manner in which it was
determined.  The defendant may appeal <u>only</u> (a) the sentence imposed
above the statutory maximum; or (b) an upward departure from the
Sentencing Guidelines, which had not been requested by the United
States.  Additionally, the defendant is aware that Title 28, U.S.C.
§ 2255, affords the right to contest or "collaterally attack" a conviction
or sentence after the conviction or sentence has become final.  The
defendant waives the right to contest his/her conviction or sentence by
means of any post-conviction proceeding.

(D.E. 20 at ¶ 6) (emphasis in original).

At Calvillo's rearraignment, the Court questioned Calvillo under oath at the rearraignment to

ensure that her plea was voluntary and knowing and to ensure that she understood and was voluntarily

relinquishing her appeal rights and right to file a § 2255 motion.  In emphasizing the waiver of

Calvillo's § 2255 rights, the Court instructed:

> THE COURT:  Well, while you're executing [the agreements], Mr.
> Pena, I'm going to tell your clients that they're giving up two very
> valuable rights in this plea agreement.  One is the right to appeal any
> sentence that I impose, unless I give them a sentence in excess of five
> years, or if I upwardly depart the guidelines without a motion from the
> U.S. Attorney.
> And the other is a right for post-conviction remedy, which is
> independent of a right to appeal, wherein you could challenge either or
> both your conviction and your sentence by bringing up such matters as
> constitutionality, or jurisdiction, or ineffective assistance of counsel.
> But if you go forward with these pleas today, you give up that right
> forever in this indictment.  Do you understand that?
>
> *****
>
> THE COURT: Ms. De Santillan?
>
> THE DEFENDANT: Yes.

(R. Tr. at 23-24).

The Court also asked the Assistant United States Attorney ("AUSA") to outline Calvillo's plea

agreement.   With regard to her waiver of § 2255 rights, the AUSA stated: "In addition, they're

4

waiving their right to collaterally attack their conviction or sentence by any post-conviction proceeding." (R. Tr. at 25). At the conclusion of this summary, Calvillo testified that the agreement was hers, that it was the entire agreement, and that she understood it completely. (R. Tr. at 25-26). She also testified that no one had promised her anything or made any agreement to her that was not contained in the written agreement, including any promise for leniency or a downward departure. (R. Tr. at 26). The agreement is signed by Calvillo and she testified at her rearraignment that her signature was on the last page, that it was read to her completely in Spanish before she signed it, and that she discussed it completely with her attorney before she signed it. (R. Tr. at 26-27). It is clear from the foregoing that Calvillo's waiver of her § 2255 rights was knowing and voluntary. See Fed. R. Crim. P. 11(b)(1)(N) (obligating court to ensure defendant understands any waiver of § 2255 rights and appellate rights prior to accepting his plea).

Pursuant to the Court's order, the Probation Department prepared a Presentence Investigation Report ("PSI"). The PSI included as "Offense Conduct" the July 12, 2004 alien smuggling arrest that prompted the indictment in this case, and also included three other alien smuggling apprehensions of Calvillo at the Falfurrias and Sarita checkpoints. Her base offense level was 12, but three levels were added because the offense involved the smuggling, transporting or harboring of seven aliens. Three additional levels were added because one of those previous smuggling attempts involved the transportation of an alien in a very small area behind the seat of a 1994 Dodge Ram pickup. Two levels were also added for obstruction of justice based on her attempts to get the material witness to lie under oath, and the PSI denied her acceptance of responsibility. The resulting offense level was 20. When coupled with her criminal history category of I, the resulting term of imprisonment guideline range was 33 to 41 months. Calvillo's counsel filed objections to the PSI, arguing: (1) that she denied the factual basis for the allegations of two of the previous smuggling offenses and those should not

have been included; (2) that she should not have received a two-level increase for obstruction of justice; (3) that the enhancement for reckless endangerment was improper because the facts were incorrect; and (4) that the PSI erred in failing to award her acceptance of responsibility. (PSI at pp. 15-16).

Calvillo was sentenced on December 28, 2004. At sentencing, the Court overruled Calvillo's objections to the PSI and sentenced her to 36 months in the custody of the Bureau of Prisons, to be followed by a three-year term of supervised release, and imposed a $50 fine and a $100 special assessment. (D.E. 28, 30). Judgment of conviction and sentence was entered January 6, 2005. (D.E. 30). Consistent with her waiver of appellate rights, Calvillo did not appeal. Her § 2255 motion was received by the Clerk of this Court on July 11, 2005. (D.E. 31). It is timely.

### III.  MOVANT'S ALLEGATIONS

Calvillo's motion lists two grounds for relief, but her two supporting memoranda seem to touch upon other grounds, as well. All of her allegations can be grouped into three general claims. First, she argues that her sentence was enhanced based on facts not admitted by her or proven beyond a reasonable doubt, and thus her sentence is unconstitutional, relying on United States v. Booker, 125 S. Ct. 738 (2005).

Her second claim is an ineffective assistance of counsel claim. In her motion, she alleges that she was denied effective assistance of counsel because her attorney did not explain the consequences of the plea agreement to her. In her supporting memoranda, she adds two additional allegations to her ineffective assistance claim: (a) that her counsel promised her she would receive a six month sentence, thereby inducing her to plead guilty; and (b) that she told her counsel she wanted to file an appeal, but her counsel told her there was "nothing to appeal," and he therefore deprived her of her right to appeal.

6

Third, she argues that the government breached the plea agreement because it promised to recommend the minimum guideline sentence and did not, because it specified that the petitioner would plead guilty to a base level of 12 and no one explained to her that her sentence could be enhanced, and because the agreement specified that she would receive a penalty of six months.[2]

Fourth, she attaches a three-page document to her motion urging that her sentence should be reduced because her status as a deportable alien leads to harsh collateral consequences, such as her ineligibility for a reduction in her sentence for participation in a drug treatment program and ineligibility for halfway house programs.[3]  She claims that she is thus subject to a more severe sentence than United States citizens convicted of the same offense and that her sentence should be reduced.

Calvillo's "objections" to the government's motions for summary judgment and to dismiss, is a disjointed group of pages.  In particular, the filing consists of a number of different documents strung together in no apparent order.  They include: (1) five pages that reference her name and essentially reiterate the arguments she raised in her initial motions;  (2) a two-page affidavit by Calvillo; and (3) twenty pages addressing <u>Booker</u> and arguing for its retroactive application.[4]  In her affidavit, she avers that her counsel did not explain the plea agreement or PSI and that he failed to appeal.  Calvillo also swears that she is ignorant about the laws of the United States and that she believed her counsel when

---

[2]  The factual basis for these claims finds no support in the record, as discussed in more detail herein.

[3]  These two pages are a type of form motion identical in all pertinent respects to motions that the Court has received over the past months from numerous defendants.  Nonetheless, the document references her § 2255 motion.  Accordingly, although it is not entirely clear that she intended the issue to be a grounds for relief under § 2255, the Court treats it as such.

[4]  These twenty pages appear to be documents prepared for use in other defendants' cases, and contain factual information (including defendants' names and sentence terms) that do not correspond with Calvillo's case.  Despite the factual inaccuracies, the Court has considered the substantive arguments contained in those twenty pages, all of which are arguments about how <u>Booker</u> applies and why <u>Booker</u> should be applied retroactively.

he told her there was nothing else to do.  She also sets forth her belief that she was denied effective assistance of counsel and that her Sixth Amendment rights were violated.

The government has moved for summary judgment against Calvillo's motion in its entirety on the grounds that it is barred by her waiver of § 2255 rights.  To the extent that any grounds fall outside the scope of the waiver, the government moves in the alterative for dismissal of her claims on the merits.  Having considered the filings by the parties and the record in its entirety, the Court concludes that all of Calvillo's claims fail, for the reasons set forth herein.

## IV.  DISCUSSION

**A.    28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996).  "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992).  "[A] collateral challenge may not do service for an appeal."  United States v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 1593 (1982).

The Court need not address whether Calvillo has procedurally defaulted her claims by failing to appeal.  Rather, the Court concludes that she waived her right to file most of the claims in her motion, including her Booker claim, see infra Section IV.D., and thus it does not reach the merits of

those claims.  United States v. Wilkes, 20 F.3d 651 (5th Cir. 1994) (enforcing defendant's voluntary and knowing waiver of § 2255 rights);  United States v. McKinney, 406 F.3d 744 (5th Cir. 2005) (enforcing a waiver of appeal rights that was signed prior to the issuance of United States v. Booker, 125 S. Ct. 738 (2005)).

To the extent she is claiming that her plea was not voluntary or not knowing due to the ineffectiveness of her counsel, however, that claim falls outside the scope of the waiver.  See, e.g., United States v. White, 307 F.3d 336, 343-44 (5th Cir. 2002) (an ineffective assistance claim survives a waiver "only when the claimed assistance directly affected the validity of that waiver or the plea itself").  Similarly, her claim that the government breached the plea agreement may fall outside the scope of her waiver, and that claim, too, is addressed on its merits. See United States v. Branam, 231 F.3d 931, 931 n.1 (5th Cir. 2000) (considering defendant's argument that United States breached the plea agreement, despite an appeal-waiver provision in the plea agreement).  Thus, the Court turns first to these two claims.[5]

## B.        Ineffective Assistance of Counsel As to Plea

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984).  United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001).  To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that her counsel's performance was both deficient and prejudicial.  Id.  This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient

_____

[5]  These claims present threshold issues.  If the Court were to determine that the plea was involuntary or unknowing, or that the government breached the agreement, the waiver, too, would be called into question.  The Court concludes herein, however, that there is no merit to Calvillo's challenges to her plea.  Thus, her § 2255 waiver is enforceable as to her remaining claims.

performance led to an unfair and unreliable conviction and sentence.  United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001).  If the movant fails to prove one prong, it is not necessary to analyze the other.  Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994), cert. denied, 514 U.S. 1071, 115 S. Ct. 1709 (1995) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

As noted, Calvillo appears to be arguing that her guilty plea was not knowing and voluntary both because her counsel did not explain to her the consequences of pleading guilty and because he promised her a sentence of six months.  In order to show prejudice on this claim, Calvillo has to show that she would not have pleaded guilty, but would have proceeded to trial instead, had she known of the possible consequences of her plea, and of the possible sentence she would receive.  See United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000) (in order to show prejudice as a result of ineffective assistance during the guilty plea process, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial") (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

As a factual matter, her contentions that she was promised any specific sentence and that she did not understand the consequences of pleading guilty are flatly contradicted by her own testimony at rearraignment.  Specifically, Calvillo testified in open court that she had enough time to talk with her attorney, that her attorney had answered all her questions, had made time to see her and taken her phone calls, and that she was satisfied with his advice and efforts. (R. Tr. at 16-17).  Calvillo was made aware of the charge against her and testified that she understood it and that she had discussed the indictment completely with her attorney.  (R. Tr. at 17-18).  The court explained to Calvillo that she had a right to a jury trial and accompanying trial rights  (R. Tr. at 19-22).

10

The Court also explained the maximum punishment that Calvillo might receive, which was a five-year term of imprisonment, a fine of up to $250,000, up to three years supervised release and a $100 special assessment. (R. Tr. at 28).  The Court also ensured itself that her plea was not being made under duress:

> THE COURT: Has anyone forced you in any way to plead guilty? ...
> Ms. De Santillan?
>
> THE DEFENDANT: No.
>
> THE COURT: Is your decision to plead guilty entirely voluntary? ...
> Ms. De Santillan?
>
> THE DEFENDANT: Yes, Your Honor.

(R. Tr. at 32).

Thus, at the time that Calvillo pleaded guilty, the Court properly and fully assured itself that her plea was knowing and voluntary, as a trial judge is required to do.  See James v. Cain, 56 F.3d 662, 666 (5th Cir. 1995); Taylor v. Whitley, 933 F.2d 325, 329 (5th Cir. 1991), cert. denied, 112 S. Ct. 1678 (1992) (defendant must have a full understanding of what the plea connotes and of its consequences).

Calvillo's sworn statements in open court are entitled to a strong presumption of truthfulness.  United States v. Lampaziane, 251 F.3d 519, 524 (5th Cir. 2001) (citing Blackledge v. Allison, 431 U.S. 63, 74, 97 S. Ct. 1621, 1629 (1977));  Wilkes, 20 F.3d at 653 (citing Blackledge for same proposition).  Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy."  United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002).  In her statements, Calvillo stated clearly and unequivocally that no one had forced her to plead guilty, or promised her anything in exchange for her pleading guilty, but that it was her decision to do so.  Those sworn statements preclude the relief she seeks here, because they contradict her belated and vague assertion

11

that she was somehow induced to plead guilty by her counsel's promise of a six-month sentence, or

that she did not understand the possible sentence she faced.

Moreover, to the extent Calvillo is claiming her counsel "promised" her that she would

receive a six-month sentence, she may proceed on that claim only under narrow circumstances. See

United States v. Cervantes, 132 F.3d 1106, 1110 (5th Cir. 1998).  Specifically, a defendant may seek

habeas relief on the basis of alleged promises, even though inconsistent with her representations in

open court, by proving: (1) the exact terms of the alleged promise; (2) exactly when, where, and by

whom the promise was made; and (3) the precise identity of an eyewitness to the promise. 132 F.3d

at 1110.  A defendant is entitled to an evidentiary hearing on the issue if she can produce evidence

showing the merit of her allegations, typically in the form of an affidavit from a reliable third party.

Id.  Calvillo has not alleged any specific facts about when or where the supposed promise was made,

nor has she identified any witnesses to the promise.  Thus, she would be unable to obtain relief even

under the Cervantes exception.

Similarly, her claim that she did not understand the consequences of her plea is belied by the

record.  The consequences of her plea, including the possible maximum sentence, were fully explained

to her by the Court, and she testified that she understood.  In short, it is clear that Calvillo cannot show

that she would have insisted on going to trial but for counsel's performance, despite her bare

allegations now to the contrary.  See Glinsey, 209 F.3d at 392.  Accordingly, Calvillo cannot prove

the prejudice prong of the Strickland inquiry, and it is unnecessary to determine whether her counsel's

performance on this issue was deficient. Her  ineffective assistance claim fails.

For the foregoing reasons, the Court finds that Calvillo's waiver is not invalidated as a result of

any alleged errors by counsel.

**C.** **Alleged Breach of the Plea Agreement**

In her other claim that could be construed as a challenge to her plea and her waiver, Calvillo argues that the government breached its plea agreement with her.  Her claim finds no factual support in the record.  Although she claims that the agreement promises her that the government would recommend a sentence at the low end of the guidelines, in fact, the agreement provides that the government will recommend a sentence "within the applicable guideline range."  (D.E. 20 at ¶ 2).  At sentencing, her offense level was determined to be a 20.  Coupled with her criminal history category of I, her applicable guideline range for a term of imprisonment was 33 to 41 months.  (D.E. 34 at 7).  The government recommended a sentence of 41 months, which was "within the applicable guideline range."  (Id.).  Thus, the government complied with its obligations in the agreement.[6]

Similarly, although Calvillo contends that the agreement provided she would receive a sentence of six months and that she would have a base offense level of 12, the agreement does not include any references to a specific offense level or specific sentence.  Indeed, the agreement expressly notes:

> 5.  Neither the Government nor any law enforcement officer can or does make any promises or representations as to what sentence will be imposed by the Court.
>
> ...
>
> 8.  In agreeing to this waiver, defendant is aware that a sentence has not yet been determined by the Court.  The defendant is also aware that any estimate of the probable sentencing range under the sentencing guidelines that he/she may have received from his/her counsel, the United States or the Probation Office, is a prediction, not a promise, and is not binding on the United States, the Probation Office or the

---

[6] Calvillo does not allege that the government breached the plea agreement by failing to recommend that she receive maximum credit for acceptance of responsibility. Thus, that claim is not properly before the Court.

13

Court.  The United States does not make any promise or representation
concerning what sentence the defendant will receive.

(D.E. 20 at ¶¶ 5, 8).

Moreover, the point was emphasized by the Court at Calvillo's rearraignment:

> THE COURT: Do you understand that your attorney's opinion of the
> guidelines is not necessarily that of mine, and that I'm not going to be
> able to determine the guideline sentence for your case until after the
> Presentence Report has been completed and both you and the United
> States have had an opportunity to challenge the facts reported by the
> Probation Office?  And that after it's been determined what guideline
> does apply to your case, I have the authority in some circumstances to
> impose a sentence that it more severe or less severe than the sentence
> called for by the guidelines? ... Ms. De Santillan?
>
> DEFENDANT: Yes, Your Honor.

(R. Tr. at 31-32).

Thus, her claim of a breach of the plea agreement by the government fails.  Because the

challenges to her plea agreement fail, her waiver of § 2255 rights contained therein is enforceable and

bars the remainder of her claims.  The effect of the waiver is discussed more fully in the subsequent

section.

**D.      Waiver of § 2255 Rights**

As noted, it is clear from the rearraignment transcript that Calvillo understood that she was

waiving her right both to appeal (except under certain circumstances) and to file any § 2255 motions,

all that is required for her waiver to be enforceable.  See Wilkes, 20 F.3d at 653 (waiver is knowing

if defendant understood he had a right, and understood he  was giving it up).  Again, her statements

under oath are entitled to a strong presumption of truthfulness.  Lampaziane, 251 F.3d at 524; Wilkes,

20 F.3d at 653; Cothran, 302 F.3d at 283-84.  Those statements support a finding that her wavier was

14

knowing and voluntary and the Court has already found her challenges to her plea and waiver to be meritless.

In sum, the Court concludes that Calvillo's waiver of her right to file a § 2255 motion is valid and enforceable. Thus, while her ineffective assistance claim as to her plea and her claim that the government breached the plea agreement are denied on the merits, her remaining claims, including her Booker claim, fall within the scope of her waiver. Those claims, therefore, are not properly before the Court. See generally Wilkes, supra; White, supra. For these reasons, her § 2255 motion is DENIED in its entirety.

The government's motion for summary judgment, which argues that all of her claims are barred by her waiver, is therefore GRANTED IN PART and DENIED IN PART. It is granted as to all of her claims except her claims that she received ineffective assistance of counsel with regard to her plea and her claim that the government breached the plea agreement. Those claims are DISMISSED on their merits, and the government's motion to dismiss is therefore GRANTED.

**E.      Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Calvillo has not yet filed a notice of appeal, this Court nonetheless addresses whether she would be entitled to a COA. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack, 529 U.S. at 484 (emphasis added).

The Court concludes that reasonable jurists could not debate the denial of Calvillo's § 2255 motion on substantive grounds nor find that the issues presented are adequate to deserve encouragement to proceed.  Miller-El, 537 U.S. at 327 (citing Slack, 529 U.S. at 484).  Her own testimony evidences an understanding of the consequences of her plea, makes plain that she was not promised any specific sentence, and establishes that her plea was voluntary.  Thus, she did not receive ineffective assistance.  Likewise, her claim that the government breached the agreement is without merit and is not adequate to deserve encouragement to proceed.

Similarly, as to the claims that this Court has addressed on procedural grounds, the Court finds that Calvillo cannot establish at least one of the Slack criteria.  Specifically, jurists of reasons would

16

not find debatable this Court's ruling that her waiver bars both her <u>Booker</u> claim and her remaining claims.  Accordingly, Calvillo is not entitled to a COA as to her claims.

## V.  CONCLUSION

For the foregoing reasons, the government's motion for summary judgment (D.E. 37) is GRANTED IN PART and DENIED IN PART and its motion for dismissal (D.E. 36) is GRANTED. Calvillo's motion to vacate, correct, or set aside her sentence pursuant to  28 U.S.C. § 2255 (D.E. 31) is DENIED WITH PREJUDICE.  Additionally, Calvillo is DENIED a Certificate of Appealability.

Ordered this 20th day of November 2005.

_____
Janis Graham Jack
United States District Judge